IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARISSA PETERSON,                    )
                                     )
            Plaintiff,               )
                                     )
        v.                           )        1:23-cv-546
                                     )
MOTORCO, LLC,                        )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendant's Motion to Dismiss the Amended Complaint, (Doc. 14). For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citation omitted). The facts, taken in the light most favorable to Plaintiff, are as follows.

This lawsuit revolves around Plaintiff's time employed at MotorCo Music Hall ("MotorCo"), a restaurant and bar in Durham, North Carolina, from August 6, 2021, to June 26, 2022. (Pl.'s

Am. Compl. ("Am. Compl.") (Doc. 13) at 3, 7.)[1] Over the course of her eleven months employed at MotorCo, Plaintiff alleges she was the victim of a series of discriminatory incidents in the workplace involving both coworkers and patrons. (Id. at 7-19.)

## A.   **Coworker 1: Chris Goddard**

### i.   **Goddard's Harassment of Plaintiff**

Throughout the fall and winter of 2021, Plaintiff's coworker, Chris Goddard ("Goddard"), "hit on [her]," "proposition[ed her] for sex," "voiced his religious beliefs as a Black Hebrew Israelite," and relayed a graphic sexual dream he had about her. (Am. Compl. (Doc. 13) at 7.) Goddard first shared his dream with Plaintiff's supervisor, Mikey Alexakis ("Alexakis"),[2] but Goddard was never reprimanded. (Id.)

In December of 2021, Goddard pulled on another coworker's wig and Plaintiff intervened. (Id. at 7.) In response, Goddard

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] In Plaintiff's Amended Complaint, she refers to someone named "Alexakis," but does not provide a first name or explain who this person is. Plaintiff's original Complaint stated that "Mikey Alexakis" was her supervisor. (Complaint ("Compl.") (Doc. 5.) at 1.) Although the Amended Complaint is the operative pleading, this court has attempted to use a limited few facts from the original Complaint in order to construe the Amended Complaint in the light most favorable to Plaintiff. Accordingly, this court will assume her Amended Complaint refers to her supervisor, Mikey Alexakis.

threatened to fight Plaintiff and two other female coworkers. (Id.) Plaintiff reported this incident to Alexakis, who promised to call and reprimand Goddard, but it is unclear if this reprimand occurred because Goddard continued threatening Plaintiff an hour later. (Id. at 7–8.) Because of this incident, Plaintiff ignored Goddard for the rest of the night and the following weeks. (Id. at 8.) In January 2022, Goddard apologized to Plaintiff for his actions. (Id. at 8.)

### ii. **Goddard's Harassment of Others**

Goddard was also involved in altercations with other individuals at MotorCo. For example, Plaintiff once had to calm down two coworkers who were upset after Goddard "blared religious speeches through the kitchen speaker and made statements condemning homosexuality." (Id.) Additionally, Goddard often altercated with staff at MotorCo while he was intoxicated. (Id.) And in the fall of 2021, Goddard was involved in an incident that narrowly avoided violence after an employee asked her father to confront Goddard for verbally harassing her. (Id.) Goddard was not reprimanded for any of these incidents. (Id. at 8–9.)

### B. **Coworker 2: Mike Studo**

At some point in Plaintiff's tenure at MotorCo, her coworker, Mike Studo, touched her during a bartending shift they

worked together. (Am. Compl. (Doc. 13) at 9.) Studo leaned his body against Plaintiff's backside while reaching for a glass. (Id.) When she reported this unwanted touch to Alexakis, he told her it was likely not intentional on Studo's part. (Id.) "No one confirmed with [Plaintiff] if Studo was ever spoken to about the unwelcome touch." (See id.)

### C.   **Customer 1: Unnamed**

While Plaintiff was working a bartending shift in fall of 2021, a customer asked if she "wanted to see his penis" and whether she "had ever had sex with a white Jewish boy before." (Id. at 10.) When this customer continued to proposition her for sex, she reported the conduct to someone named "Jaffer," who took over serving the customer so Plaintiff could avoid interacting with him. (Id.)[3]

### D.   **Customer 2: "Raye"**

While working at MotorCo, Plaintiff had frequent encounters with a regular customer named "Raye." (Id.) Raye made comments about her body and appearance, "suggestively star[ed]" at her, sought her out at MotorCo, and made inappropriate comments to her such as that he "liked watching women engage with each other sexually." (Id. at 10–11.) He also offered Plaintiff side jobs,

---

[3] Plaintiff does not describe who "Jaffer" is, but this person appears to be another bartender working alongside her.

like painting his client's home, because, according to Raye, the job "needed a delicate female touch" and "the client would rather watch [her] paint than watch a man." (Id. at 10–11.) As a result of these interactions and in an effort to avoid Raye, Plaintiff often asked Alexakis to serve him instead, which he did. (Id. at 12.) Alexakis also acknowledged Raye's conduct was not appropriate, but did not address it with Raye. (Id.)[4] In January 2022, Raye attended a staff-only holiday party, after Plaintiff had complained to management that he should not be permitted to attend. (Id.)

In the spring of 2022, Plaintiff refused to interact with Raye due to her discomfort surrounding their previous encounters — when he arrived at MotorCo, coworkers would alert her, and she would then hide in the back of the restaurant or a few blocks away in her car until Raye left. (Id. at 13–14.) On June 15, 2022, she reported Raye's conduct to a MotorCo owner, Jeremy Roth, (id. at 13.),[5] who acknowledged the sexual harassment but

---

[4] Raye also made inappropriate comments to other female employees. (Am. Compl. (Doc. 13) at 11–12.)

[5] Plaintiff's Amended Complaint does not identify Roth's role at MotorCo. However, as discussed supra n.2, this court uses a few limited facts from her original Complaint in order to read the Amended Complaint in the light most favorable to Plaintiff. Her original Complaint asserts that Roth is one of MotorCo's owners, (Compl. (Doc. 5) at 1), and at this stage, this court will assume that to be true.

"offered no solutions." (Id.) The last day Plaintiff hid from Raye was her final day of work, June 26, 2022. (Id. at 14.)

### E. **Customer 3: Unnamed**

On June 24, 2022, a male customer yelled and cursed at Plaintiff and another female coworker — calling them "bitches" and "other demeaning names." (Id.) Two of Plaintiff's coworkers asked the customer to leave. (Id.)

### F. **Customer 4: James Cotten**

Finally, Plaintiff had frequent interactions with James Cotten, a MotorCo customer and friend of Chris Goddard. (Id. at 14.) Cotten often spent time in the MotorCo kitchen, where he made sexual comments directed at Plaintiff. (Id.) On May 30, 2022, Cotten refused to leave the kitchen when Plaintiff asked and stroked her neck with his hand. (Id. at 14-15.) Plaintiff told him not to touch her and again requested that he leave. (Id. at 15.) When he refused, she threatened to touch his clothes with her work gloves, which were covered in raw chicken. (Id.) In response, Cotten told Plaintiff that if she did so, he would "slap the shit out of [her]." (Id.) She promptly recounted the incident to her coworkers. (Id.)

The following day, June 1, 2022, she reported the incident to Alexakis, who apologized but "offered no solution." (Id.) The

- 6 -

next week, Plaintiff was out of town, but Cotten continued to patronize MotorCo while she was away. (Id.)

On June 15, 2022, Plaintiff met with Roth to report the Cotten incident and to express her discomfort with continued harassment from customers like Raye. (Id.) Roth stated he was unaware of the Cotten incident or any harassment, but agreed to "trespass" Cotten, which he did that evening. (Id. at 16.) The "trespass" appears to have amounted to a verbal threat by Roth that Cotten was no longer welcome on MotorCo premises, but Roth did not ask Cotten for his identification or contact information. (Id.)

On June 20, 2022, Plaintiff contacted Alexakis to request surveillance footage from the May 30, 2022, incident with Cotten. (Id.) The following day, Roth reported to Plaintiff that the May 30th footage did not exist because the surveillance footage records over itself after two weeks. (Id. at 17.) Plaintiff also told Roth that she was concerned that not all staff had been informed of Cotten's "trespassed" status. (Id.) Roth responded that he did not need to inform all staff because either he or Alexakis were always present and could call the police should Cotten enter the premises again. (Id.)

On June 23, 2022, Plaintiff discussed the Cotten incident with a Durham Police Officer and filed a report. (Id. at 18.)

- 7 -

The officer informed her that Cotten had a violent record and that police had not received any communication regarding MotorCo's "trespass" of him. (Id.) Plaintiff reported this information through a messaging app to Roth and Alexakis, who both viewed the message but did not respond. (Id.)

On June 26, 2022, Plaintiff printed out photos of Cotten and taped them to the wall, along with a note that encouraged staff to contact management and the police if he reentered MotorCo. (Id. at 18.) That same day, a coworker told Plaintiff that they thought "Management was ignoring [Plaintiff's] concerns because [she] was a black woman," and noted that when Roth's daughter was sexually harassed at work there were stricter consequences.[6] (Id. at 18–19.)

Plaintiff resigned on June 27, 2022, explaining that she was not comfortable at MotorCo due to the "constant sexual harassment." (Id. at 19.) She later met with management on July 15, 2022, where she detailed her experiences and requested continued support from management as she pursued legal protection from Cotten. (Id.) During this conversation,

_____

[6] Plaintiff's allegations as to what she was told by others are somewhat problematic because it is not clear whether these statements by others have or will likely have evidentiary support. See Fed. R. Civ. P. 11(b)(3). This court construes these allegations as assertions on information and belief because of Plaintiff's pro se status.

- 8 -

management failed to explain what kind of investigation, if any, was performed after the Cotten incident, but Roth did agree to testify as a witness in Plaintiff's action against Cotten. (Id.)

## G. EEOC Charge

Plaintiff filed a charge ("the Charge") with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2022.[7] (Am. Compl. (Doc. 13) at 22.) She checked the boxes of "race" and "sex" as the grounds upon which she was discriminated. (Id.) In response to the prompt, "Date of most recent job action you think was discriminatory," Plaintiff answered June 26, 2022. (Id. (emphasis in original).) The Charge itself is brief. She states:

> No action was taken when I was being sexually harassed by a coworker [and] customers. I continued to work in a hostile work environment. The harassment escalated, [and] I was assaulted [and] threatened by a customer. My employer didn't investigate the crimes that occurred against me, ignored surveillance footage that could have been used as evidence, [and] Jeremy refused to inform other staff of the crimes, or

_____

[7] Plaintiff alleges in her Amended Complaint that she filed this Charge on December 17, 2022, (Am. Compl. (Doc. 13) at 19), but the attached copy of the Charge is signed and dated December 20, 2022. (Id. at 22.) The date reflected on the attached Charge, which is integral to Plaintiff's complaint, must prevail, because "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based . . . crediting the document over conflicting allegations in the complaint is proper." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016); see Kensington Volunteer Fire Dept., Inc. v. Montgomery Cnty., Md., 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court may consider documents attached to the complaint . . . 'so long as they are integral to the complaint and authentic.'").

- 9 -

> address reporting harassment. I think my complaints
> [and] requests for help [and] a safe work environment
> were ignored [because] I was expected to deal [with]
> harassment from male customers, who were mostly
> Black, like myself. I don't think they took my
> complaint seriously.

(Id.) The EEOC issued Plaintiff a Notice of Right to Sue

on March 7, 2023. (Id. at 20-21.)

## II.  **PROCEDURAL HISTORY**

Plaintiff filed her EEOC Charge on December 20, 2022, and

received a Notice of Right to Sue from the EEOC on March 7,

2023. (Am. Compl. (Doc. 13) at 20-22.) Plaintiff initially filed

her complaint in Durham County Superior Court on June 6, 2023,

(see Compl. (Doc. 5) at 1), but Defendant removed the lawsuit to

federal court on June 30, 2023. (Doc. 1.)

Defendant filed a Motion to Dismiss or in the Alternative

for a More Definite Statement, (Doc. 8), and a corresponding

memorandum, (Doc. 9), on August 7, 2023. Plaintiff filed a

motion on September 25, 2023, for an extension of time to

respond to Defendant's motion, (Doc. 11), which this court

granted on October 3, 2023, (Doc. 12). Plaintiff filed an

Amended Complaint on October 30, 2023. (Pl.'s Am. Compl. ("Am.

Compl.") (Doc. 13).) Defendant filed a Motion to Dismiss

Plaintiff's Amended Complaint on November 13, 2023, (Def.'s Mot.

to Dismiss the Am. Compl. ("Def.'s Mot.") (Doc. 14)), and a

supporting memorandum of law, (Def.'s Mem. in Supp. of its Mot.

- 10 -

to Dismiss the Am. Compl. ("Def.'s Mem.") (Doc. 15)). Plaintiff filed a response to Defendant's Motion to Dismiss on January 3, 2024, (Pl.'s Resp. to the Mot. to Dismiss ("Pl.'s Resp.") (Doc. 21)), and Defendant replied on January 16, 2024, (Reply in Supp. of Def.'s Mot. to Dismiss the Am. Compl. ("Def.'s Reply") (Doc. 22)).

## III. **ANALYSIS**

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e — 2000e-17, for employment discrimination on the basis of race and sex. (Am. Compl. (Doc. 13) at 3-4.) Title VII prohibits employers from, inter alia, "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff alleges discriminatory conduct in two forms: 1) "Unequal terms and conditions of [her] employment" and 2) "Constructive Discharge." (Am. Compl. (Doc. 13) at 4.) The broad phrase "unequal terms and conditions of employment" encompasses a variety of discriminatory practices. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) ("The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to 'strike at the entire spectrum of disparate treatment

- 11 -

of men and women' in employment." (citation omitted)). In light of the contents of Plaintiff's Amended Complaint and EEOC Charge, this court understands Plaintiff to allege the following claims under Title VII: 1) continued sexual harassment by coworkers and customers amounting to a hostile work environment, 2) race discrimination based on her employer's inadequate response to her claims of sexual harassment, and 3) constructive discharge based on either or both forms of discrimination.[8]

---

[8] Defendant appears to interpret Plaintiff's Amended Complaint to allege a hostile work environment based on sex <u>and</u> race. (<u>See</u> Def.'s Mem. (Doc. 15) at 2.) This court does not agree. As pleaded by Plaintiff, the harassment by customers and coworkers that she allegedly endured throughout her employment was harassment on the <u>basis of her sex</u>. Plaintiff's contention that MotorCo may have been "ignoring [her] concerns because [she] was a black woman," (<u>see</u> Am. Compl. (Doc. 13) at 18-19), is more appropriately construed as a Title VII racial discrimination claim in which her employer allegedly "discriminate[d] against [her] with respect to [her] . . . conditions[] or privileges of employment, because of [her] <u>race</u>." <u>See</u> 42 U.S.C. § 2000e-2(a)(1) (emphasis added). This court addresses Plaintiff's Title VII racial discrimination claim <u>infra</u> Section III.B.1.i.

Even if Plaintiff is asserting a hostile work environment claim on the theory that Defendant's repeated failure to address her sexual harassment was <u>because of her race</u>, and this allegedly race-based omission by Defendant created a hostile environment, this claim would fail for similar reasons to Plaintiff's racial discrimination claim, as analyzed <u>infra</u> Section III.B.1.i. That is, Plaintiff has not pleaded facts which allow this court to infer that Defendant's alleged inadequate response to her sexual harassment was indeed "based on her race." <u>See</u> <u>Johnson v. Angels</u>, 125 F. Supp. 3d 562, 568 (M.D.N.C. 2015) (cleaned up) (providing the elements of a claim for a racially hostile work environment).

- 12 -

Defendant has moved to dismiss these claims on several grounds. First, Defendant argues that Plaintiff failed to properly and timely exhaust her administrative remedies. (Def.'s Mem. (Doc. 15) at 1, 6–10.) Second, Defendant argues that even if Plaintiff did properly exhaust her administrative remedies, her Amended Complaint fails to plausibly allege facts sufficient to state claims for relief. (Id. at 10.) This court will address each argument in turn.

### A.   <u>Administrative Exhaustion</u>

As a preliminary matter, Defendant asserts two procedural arguments that Plaintiff failed to properly exhaust her administrative remedies under Title VII. (Def.'s Mem. (Doc. 15 at 6.) First, Defendant argues that Plaintiff's Amended Complaint exceeds the scope of her EEOC Charge, rendering many of her allegations procedurally barred. (Id.) Second, Defendant argues that Plaintiff's EEOC Charge was not timely filed, and her subsequent lawsuit is therefore procedurally barred. (Id.)

To bring a Title VII action in federal court, a plaintiff must first file an administrative charge with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012). "Title VII's charge-filing requirement is a [mandatory] processing rule," but "not a jurisdictional prescription delineating the adjudicatory authority of courts."

- 13 -

Fort Bend Cnty., Tex. v. Davis, 587 U.S. 541, 551 (2019). The
argument that a plaintiff has failed to exhaust administrative
remedies is one that "a defendant must raise . . . as an
affirmative defense." Bush v. Frederick Cnty. Pub. Schs., No.
23-1127, 2024 WL 639255, at * 2 (4th Cir. Feb. 15, 2024).[9]

On a Rule 12(b)(6) motion, courts generally do not "resolve
contests surrounding . . . the applicability of defenses." King
v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). However,
"where facts sufficient to rule on an affirmative defense are
alleged in the complaint, the defense may be reached by a motion
to dismiss filed under Rule 12(b)(6)," so long as "all facts
necessary to the affirmative defense 'clearly appear[] on the
face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458,
464 (4th Cir. 2007) (emphasis and alteration in original)
(quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4
F.3d 244, 250 (4th Cir. 1993)).

---

[9] See also Jones v. Bock, 549 U.S. 199, 200 (2007) ("[T]he
practice under the Federal Rules is to regard exhaustion as an
affirmative defense."); L.N.P. v. Kijakazi, 64 F.4th 577, 585
(4th Cir. 2023) ("[E]xhaustion is treated as an affirmative
defense."); Chisholm v. Mountaire Farms of N.C. Corp., 629 F.
Supp. 3d 368, 372-73 (M.D.N.C. 2022) (explaining that the
defendant's argument that the plaintiff's EEOC charge was not
timely filed is an affirmative defense).

1.    **Scope of the EEOC Charge**

Defendant argues that "many of the allegations raised in the Amended Complaint were not alleged in the Charge and are therefore procedurally barred." (Id. at 6.) Plaintiff has attached her EEOC Charge to her Amended Complaint, so "all facts necessary to the affirmative defense clearly appear on the face of the complaint," Goodman, 494 F.3d at 464 (cleaned up), and thus this court may rule on this affirmative defense at this time. Accordingly, this court must determine whether Plaintiff's current claims were alleged in her EEOC Charge before turning to their merits.

The allegations within an EEOC charge "generally operate to limit the scope of any subsequent judicial complaint." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962–63 (4th Cir. 1996) (citing King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976)). A subsequent Title VII judicial complaint may only contain "discrimination claims stated in the [EEOC] charge, those reasonably related to the original [charge], and those developed by reasonable investigation of the original [charge]." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). The purpose of this rule is to ensure the exhaustion requirement fulfills its "goals of providing notice and an opportunity for an agency response." Sydnor, 681 F.3d at 593.

- 15 -

When determining whether the claims in a judicial complaint are "reasonably related" to claims raised in the EEOC charge, courts evaluate whether a "factual relationship" exists between them, Chaidez v. Ford Motor Co., 937 F.3d 998, 1004-05 (7th Cir. 2019), and whether the judicial claim would be "within the scope of a reasonable investigation" of the EEOC charge, Manson v. N.C. A & T State Univ., No. 1:07-CV-867, 2008 WL 2987071, at *6 (M.D.N.C. July 31, 2008); see also McCray v. Md. Dep't of Transp., 662 F. App'x 221, 224 (4th Cir. 2016). At the very least, the "EEOC charge and the complaint must . . . describe the same conduct and implicate the same individuals." Ivanova-Nikolova v. E. Carolina Univ., No. 4:08-CV-209, 2009 WL 10689633, at *4 (E.D.N.C. Dec. 15, 2009) (emphasis added) (quoting Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001)). Accordingly, a complaint will not be considered reasonably related to an EEOC charge if the charge references "different time frames, actors, and discriminatory conduct than the central factual allegations in [the] formal suit." See Chacko, 429 F.3d at 506; see also Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (complaint and charge not reasonably related where charge alleged discrimination based on race and complaint alleged discrimination and retaliation based on color, race, and sex).

- 16 -

The reasonable relationship requirement aims to prevent the "disjunction" that results when a charge and subsequent complaint present "two different cases." See Chacko, 429 F.3d at 512. But "the absence of a perfect fit between the administrative complaint and a civil action is not necessarily fatal." Manson, 2008 WL 2987071, at *6. A subsequent complaint can encompass details "not specifically enumerated in the [administrative] complaint," Sydnor, 681 F.3d at 597 (alteration in original), and ultimately, a plaintiff's "civil claims [are] reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). This flexibility reflects courts' obligation to recognize that "EEOC charges often are not completed by lawyers" and therefore "must be construed with utmost liberality." Balas v. Huntington Ingalls Industs., Inc., 711 F.3d 401, 408 (4th Cir. 2013).

### i. **Hostile Work Environment**

Defendant argues that the hostile work environment claim in Plaintiff's Amended Complaint exceeds the scope of her EEOC Charge ("the Charge") because the Amended Complaint evinces "a broader pattern of misconduct," and the Charge only makes "general references to harassment and a hostile work

- 17 -

environment, but it fails to identify any specific occurrence except for one." (Def.'s Mem. (Doc. 15) at 7.) Defendant explains that the only specific incident outlined in the Charge resembles that of the Cotten incident described in Plaintiff's Amended Complaint (although Plaintiff does not reference Cotten by name in her Charge). Id. Defendant argues that because Plaintiff articulates additional instances of harassment beyond the Cotten incident in her Amended Complaint, it "includes different actors and significantly different events than what was alleged in the Charge" and therefore the two are not reasonably related. Id. at 7-8.

Defendant's argument takes the "reasonable relationship" standard too far by assuming the discrete instance of harassment described in the Charge was the exclusive instance, despite the Charge's explicit allegation of a pattern of harassment. (See Am. Compl. (Doc. 13) at 22) (EEOC Charge alleging that Plaintiff "was being sexually harassed by a coworker [and] customers" and "continued to work in a hostile work environment"). In Chacko, the court found that there was no reasonable relationship where discrete instances of harassment alleged in the EEOC charge were unaccompanied by any suggestion of the "long-term harassment that [the plaintiff] sought to prove at trial." 429 F.3d at 511. But here, Plaintiff's Charge did suggest long-term harassment —

- 18 -

it expressly referred to multiple harassers and stated that she "was being harassed" and "continued to work in a hostile work environment." (Am. Compl. (Doc. 13) at 22). This language fairly implies harassment beyond the instance described in the Charge.

Further, although Plaintiff's Amended Complaint included additional details of the harassment she alleges, the reasonable relationship rule does not require the charge and the complaint to be identical, so long as the "centerpiece" of the plaintiff's claim is the same in both. See Clanton v. City of Va. Beach, No. 2:14-CV-649, 2015 WL 1538198, at *7 (E.D. Va. Apr. 3, 2015). If the complaint and the charge reference the same actions and individuals, the complaint may "encompass details not specifically enumerated in the [administrative] complaint." Sydnor, 681 F.3d at 596–97 (alteration in original) (internal quotation marks and citation omitted). Plaintiff's Charge and Amended Complaint both allege a hostile work environment arising from continued sexual harassment by "a coworker [and] customers." (See Am. Compl. (Doc. 13) at 7, 9, 22.) Although the Amended Complaint illustrated the Charge's general allegations by providing specific details about the harassment, the details were not additional theories of liability, but rather fleshed out Plaintiff's "original theory of the case" — that sexual

harassment by coworkers and customers created a hostile work environment. See Freeman, 291 F.3d at 636.

Accordingly, Defendant's citation to Stevens v. Elior Inc., No. 3:22-CV-576, 2023 WL 3061857 (W.D.N.C. Apr. 24, 2023), is unavailing. (See Def.'s Mem. (Doc. 15) at 6–8.) In that case, the plaintiff's charge alleged harassment based on her manager's playing of Christian music and sermons during work and included a general statement that she was being treated in an aggressive and hostile manner. Stevens, 2023 WL 3061857, at *3. Yet, the complaint additionally outlined a series of hostile interactions by coworkers which were in no way referenced by the charge. Id. In other words, the complaint in Stevens added new actors — but here, Plaintiff's charge alleged a hostile work environment based on sexual harassment by coworkers and customers and her subsequent complaint did not add new actors or conduct but instead added details about the actors and events already referenced in the Charge.

Finally, specific instances of sexual harassment by coworkers and customers would be within the expected scope of a "reasonable administrative investigation" of an EEOC charge alleging sexual harassment by coworkers and customers. See Sydnor, 681 F.3d at 594. The purpose of an EEOC charge is not to comprehensively describe every detail surrounding the alleged

- 20 -

discrimination, but rather to provide the employer notice and to provide the EEOC a "springboard to investigate whether the employer is engaged in any discriminatory practices" which may naturally lead to a discovery of "illegal practices other than those listed in the charge." Equal Emp. Opportunity Comm'n v. Gen. Elec. Co., 532 F.2d 359, 364 (4th Cir. 1976) (citation omitted).

Accordingly, because the allegations in Plaintiff's complaint of specific misconduct by coworkers and customers relating to her hostile work environment claim are "reasonably related" to her EEOC charge, those allegations are within the scope of her charge.[10]

### ii. Racial Discrimination

Plaintiff's claim of racial discrimination is also within the scope of her EEOC Charge. Plaintiff's Charge alleges that

---

[10] Defendant also argues that Plaintiff failed to exhaust administrative remedies as to any harassment after the Cotten incident because, "[t]he Charge makes clear that the harassment 'escalated' with the Cotten incident and refers to no other harassment occurring after that alleged escalation." (Def.'s Mem. (Doc. 15) at 8.) This argument is unpersuasive — the Charge alleged a pattern of sexual harassment and while it described an incident where the harassment was at its worst, there is nothing to suggest that any and all sexual harassment ceased to exist following the Cotten incident. In fact, the Charge evinces the opposite because Plaintiff listed June 26, 2022, as the last date of harassment, (Am. Compl. (Doc. 13) at 22), which the Amended Complaint references as her last day of work before resigning. (Id. at 18–19.)

- 21 -

MotorCo did not take her complaints of sexual harassment seriously because she was a Black woman. (Am. Compl. (Doc. 13) at 22.) Her complaint, albeit briefly, alleges the same. (Id. at 18-19 ("Another staff member told me they think Management was ignoring my concerns because I was a black woman.").) Accordingly, Plaintiff's racial discrimination claim has been properly exhausted because it was "stated in the [EEOC] charge." See Chacko, 429 F.3d at 506.

### iii. **Constructive Discharge**

Defendant also argues that Plaintiff's Charge, unlike her Amended Complaint, does not raise a claim of constructive discharge or even reference her resignation. (Def.'s Mem. (Doc. 15) at 8.) This claim and any mention of her resignation are missing from the Charge. (Am. Compl. (Doc. 13) at 22.) Therefore, this court must decide whether a claim for constructive discharge is "reasonably related" to the claims in Plaintiff's EEOC charge: racial discrimination or sexual harassment-based hostile work environment.

"The Fourth Circuit has consistently held that a plaintiff's claim exceeds the scope of the EEOC charge where the charge alleges one basis of discrimination and litigation introduces another independent basis." Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 428 (E.D. Va. 2013) (citing

- 22 -

Chacko, 429 F.3d at 509).[11] Constructive discharge requires proof of discrimination, see Green v. Brennan, 578 U.S. 547, 555 (2016), so the facts alleged in support of constructive discharge often overlap with those alleged to support a plaintiff's separately actionable discrimination claims. However, constructive discharge is a "discrete discriminatory act," Hanke, 2024 WL 3554973, at *9, and nearly all cases addressing the issue find that a claim for constructive discharge is not reasonably related to a discrimination or hostile work environment claim. See Bockman v. T & B Concepts of Carrboro, LLC, No. 1:19-CV-622, 2020 WL 5821169, at *14 (M.D.N.C. Sept. 30, 2020) ("[C]onstructive discharge is not reasonably related to claims of retaliation and discrimination based on sex and disability."); Harvill v. Westward Commc'ns, LLC, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) ("Constructive

---

[11] There is, however, an exception to this general rule when a plaintiff is retaliated against after the filing of an EEOC charge. In that scenario, courts will permit the complaint to include a claim of retaliation, despite the fact that it was not administratively exhausted. See Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). Courts have also permitted litigants to add an unexhausted constructive discharge claim that is the "predictable culmination" of conduct alleged in an earlier EEOC Charge. See Hanke v. United Parcel Serv., No. 1:23-CV-2130, 2024 WL 3554973, at *9 (D. Md. July 26, 2024) (slip copy). However, neither of these two exceptions applies here, where Plaintiff's resignation was months before her filing of an EEOC Charge and there is no further alleged discrimination following the filing of her Charge.

discharge . . . does not grow out of harassment allegations."); Herron v. DaimlerChrysler Corp., 388 F.3d 293, 303 n.2 (7th Cir. 2004) (explaining that an EEOC charge describing racial discrimination, retaliation, and harassment were not reasonably related to his complaint's allegation of constructive discharge); Winegarner v. Dallas Cnty. Schs., No. 3:98-CV-2523, 1999 WL 325028, at *2 (N.D. Tex. May 19, 1999) (holding that plaintiff's claim of constructive discharge went beyond the scope of her EEOC charge, which only alleged discriminatory treatment on the job because "[t]reatment on the job and constructive discharge should be treated as separate and distinct discriminatory events").

Notwithstanding the foregoing analysis, a district court in this circuit held that an EEOC charge's allegation of retaliatory reassignment was reasonably related to the complaint's allegation of constructive discharge. See Equal Emp. Opportunity Comm'n v. Newtown Inn Assocs., 647 F. Supp. 957, 961 (E.D. Va. 1986). But here, unlike in Newtown, the Charge did not allege retaliation, nor was any notice provided to the employer of a constructive discharge claim. See Equal Emp. Opportunity Comm'n v. Cal. Psych. Transitions, Inc., 644 F. Supp. 2d 1249, 1269 (E.D. Cal. 2009) (explaining that, in Newtown, the EEOC provided notice to the employer of constructive discharge during

- 24 -

conciliation discussions and when it issued letters of determination). In fact, Plaintiff made no mention of her resignation in her Charge, despite the fact that it was filed nearly six months after she left MotorCo.

This court recognizes that the factual allegations underpinning a discrimination or hostile work environment claim may also form the basis of a constructive discharge claim. And while it may only slightly broaden the scope of the suit, see Newtown, 647 F. Supp. at 961, raising a constructive discharge claim for the first time in a subsequent judicial lawsuit circumvents administrative exhaustion and its policy goals. This court therefore finds that its recent conclusion in Bockman - that a claim of constructive discharge is not reasonably related to claims of discrimination or hostile work environment – is again applicable here. See Bockman, 2020 WL 5821169, at *14. Accordingly, Plaintiff's claim for constructive discharge is not within the scope of her EEOC charge, has not been administratively exhausted, and is hereby dismissed.

### 2. Timeliness of EEOC Charge

EEOC Charges must be filed within 180 days of the alleged Title VII violation. 29 C.F.R. § 1601.13(a)(1); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 222 (4th Cir. 2016).

- 25 -

Defendant argues that Plaintiff's claims were not timely exhausted through this administrative charge process. (Def.'s Mem. (Doc. 15) at 8–10.) For Plaintiff's Charge to be timely, she must allege discrimination occurring on or after June 23, 2022.[12] Defendant concedes that "Plaintiff alleges events occurring on and after June 23, 2022," but asserts that "none of those events include any harassing conduct because of her race or sex." (Id. at 10.) Defendant contends that "the last act where Plaintiff interacted with anyone that she accuses of sexual harassment occurred on June 15, 2022" and she filed her charge more than 180 days later on December 20, 2022. (See id. at 10.)

### i.    Race Discrimination

This court finds that Plaintiff's claim of racial discrimination was timely exhausted. As explained above, this court interprets Plaintiff's complaint to assert a claim of racial discrimination based on her employer's alleged indifference to her complaints of sexual harassment. Plaintiff alleges that she messaged Roth and Alexakis on June 23, 2022, notifying them that she had filed a police report against Cotten and that police had informed her that Cotten was not legally

---

[12] June 23, 2022, is 180 days prior to Plaintiff's EEOC Charge filing on December 20, 2022.

trespassed. (Am. Compl. (Doc. 13) at 18). On June 26, 2022, a coworker shared with her that she thought "Management was ignoring [Plaintiff's] concerns because she was a black woman," and Plaintiff also learned that Roth's daughter's sexual harassment had been met with "stricter consequences." (Id. at 18-19.) It appears that Plaintiff alleges that her employer's failure to take her June 23, 2022, complaint more seriously amounts to discrimination on the basis of race. This alleged discriminatory act by omission occurred on or after June 23, 2022, and thus is timely as it falls within 180 days of the filing of the Charge.[13]

### ii. Hostile Work Environment

The timeliness of the filing of a charge for hostile work environment is unique because a hostile work environment consists of "a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). In Morgan, the Supreme Court held that

---

[13] To the extent Plaintiff intended to allege in her Amended Complaint that management failed to respond to her earlier complaints about sexual harassment prior to June 23, 2022, because of her race, those alleged discriminatory acts by omission are not timely. Plaintiff may "proceed and recover only on deliberate discrimination that occurred within the [180] days of filing [her] charge." Perkins v. Int'l Paper Co., 936 F.3d 196, 207 (4th Cir. 2019).

as long as a plaintiff has alleged at least one "act contributing to the [hostile work environment] claim [that] occurs within the filing period," a court may consider the "entire time period of the hostile environment," including acts earlier than 180 days since the Charge's filing. See id. at 117. The timely "anchor" act need not itself be independently actionable, Gilliam v. S. Carolina Dep't of Juv. Just., 474 F.3d 134, 140-41 (4th Cir. 2007), but it must be so related to the untimely acts as "to comprise one unitary and ongoing unlawful employment practice." Edwards v. Murphy-Brown, LLC, 760 F. Supp. 2d 607, 623 (E.D. Va. 2011). To determine this, courts consider whether the anchor act(s) and untimely acts "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." McLaughlin v. Barr, No. 1:19-CV-318, 2020 WL 869914, at *8 (M.D.N.C. Feb. 21, 2020) (citation omitted).

Notably, courts have expressed that determining the applicability of the continuing violation doctrine is highly fact-bound and imprecise at the motion to dismiss stage. See Edwards, 760 F. Supp. 2d at 624-25; Drees v. Cnty. of Suffolk, No. 06-CV-3298, 2007 WL 1875623, at *8 (E.D.N.Y. June 27, 2007) ("[T]he issue of whether sufficient continuity exists for all of the conduct alleged to count as part of a single hostile work

environment claim cannot be resolved at the motion to dismiss stage."); Lewis v. City of Fresno, No. CV-F-08-1062, 2009 WL 2905738, at *7 (E.D. Cal. 2009) ("Whether Plaintiff is entitled to the continuing violation doctrine is a factual inquiry that must be resolved at summary judgment or trial."). This trepidation is especially salient here, because challenging the timeliness of an EEOC charge is an affirmative defense that is generally not intended to be resolved on a motion to dismiss.[14]

Plaintiff has alleged one instance of harassment by a customer that falls within 180 days of her EEOC Charge filing: on June 24, 2022, a customer screamed at Plaintiff and another female coworker and called them "bitches and other demeaning

---

[14] Prior to 2019, the Fourth Circuit considered EEOC exhaustion a pre-requisite for subject matter jurisdiction. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (overruled in relevant part by Fort Bend Cnty., 587 U.S. at 551). Now, however, in the aftermath of Fort Bend County, exhaustion is not jurisdictional, but rather a procedural pre-requisite that a defendant may challenge by affirmative defense. See 587 U.S. at 551. In other words, a plaintiff "is not required to include allegations in the [c]omplaint negating an affirmative defense." Leane v. Carter, No. 1:21-CV-514, 2022 WL 16836205, at *4 (M.D.N.C. Aug. 8, 2022).

names." (Am. Compl. (Doc. 13) at 14.)[15] Additionally, Plaintiff argues that the date of her "forc[ed] . . . resign[ation]" on June 27, 2022, should be the date that starts the 180—day clock. (See Pl.'s Resp. (Doc. 21) at 1.) It is not clear from the face of Plaintiff's complaint whether either the June 24 incident or her resignation on June 27 is sufficiently related to Plaintiff's untimely allegations of harassment to be part and parcel of the same "one unlawful employment practice" such that the continuing violations doctrine may apply. Morgan, 536 U.S. at 118. Given this factual ambiguity, the fact that the timeliness of the EEOC Charge is an affirmative defense and not an element required to be pleaded by the Plaintiff, and courts' concern with resolving this issue at the motion to dismiss stage, this court chooses to defer the determination of the applicability of the continuing violations doctrine until trial pursuant to Federal Rule of Civil Procedure 12(i). Fed. R. Civ. P. 12(i) ("[A]ny defense listed in Rule 12(b)(1)-(7) . . . must

---

[15] Defendant argues that no events after June 23, 2022, are related to Plaintiff's sex and therefore cannot be a part of her sex-based hostile work environment claim. But courts have recognized that a woman being called a "bitch" can "constitute harassment based upon sex." Equal Emp. Opportunity Comm'n v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (quoting Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 229 (1st Cir. 2007); see also Harris v. Mayor & City Council of Balt., 429 F. App'x 195, 201 (4th Cir. 2011).

be heard and decided before trial <u>unless the court orders a deferral until trial</u>.") (emphasis added).

## B. <u>Failure to State a Claim: Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556-57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true, <u>id.</u>, and draws all reasonable inferences in the plaintiff's favor, <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). However, this court does not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

Further, pro se complaints, even inartful ones, must be liberally construed by federal courts. <u>Boag v. MacDougall</u>, 454

- 31 -

U.S. 364, 365 (1982). However, pro se plaintiffs are still required to plead facts that fairly put the defendant on notice of the nature of the claims against them and "contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 & n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555).

### 1. Title VII Claims

#### i. Racial Discrimination

On Plaintiff's Charge and her Amended Complaint she checked a box indicating she was discriminated on the basis of race and briefly described racial discrimination. (Am. Compl. (Doc. 13) at 4, 22.) The crux of Plaintiff's claim is that her supervisors discriminated against her on the basis of race by inadequately responding to her allegations of sexual harassment. (Id. at 18–19, 22.) In her EEOC Charge, she explained that she "was expected to deal with harassment from male customers, who were mostly Black, like [herself]." (Id. at 22.) In her Amended Complaint, Plaintiff alleges that a coworker told Plaintiff that they thought "Management was ignoring [Plaintiff's] concerns because [she] was a black woman." (Id. at 19.) Additionally, that coworker told her that Motorco's owner, who is White, had a daughter who was sexually harassed at work and that incident was met with "stricter consequences" than Plaintiff's complaints. (Id.)

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage, a Plaintiff must allege facts that support a reasonable inference of discriminatory intent, see Iqbal, 556 U.S. at 682-83, and "raise a right to relief above the speculative level." Twombly, 550 U.S. at 545.

Plaintiff's allegations do not raise her claim above the speculative level. The only non-conclusory factual allegation Plaintiff asserts to support this claim is that Roth's daughter was also sexually harassed. (Am. Compl. (Doc. 13) at 19.) This allegation is relevant because "[a]n inference of race . . . discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races . . . , if those colleagues were treated more favorably under similar circumstances." Booth v. Cnty. Exec., 186 F. Supp. 3d 479, 486 (D. Md. 2016). However, Plaintiff does not assert facts that plausibly allege she and Roth's daughter are similarly situated but for race. As an initial matter, Plaintiff does not identify Roth's daughter's race. Even assuming Roth's daughter is a different race than Plaintiff, this court has no information regarding the nature and circumstances of the sexual harassment

Roth's daughter endured and whether it was similar to Plaintiff's alleged experience. Finally, although Plaintiff alleges that Roth's daughter's experience of harassment was met with "stricter consequences," she alleges no facts to support this conclusory statement. (See Am. Comp. (Doc. 13) at 19.)

Without any of this information, Plaintiff's claim is legally insufficient. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 191 (4th Cir. 2010) (finding allegations of race discrimination did "not rise above speculation" because plaintiff only alleged that his White supervisor "was not disciplined despite having 'outside business involvements,'" but did not provide any further information as to what those business involvements were or how they were "comparable to the acts [the plaintiff] was alleged to have committed"); Jefferies v. UNC Reg'l Physicians Pediatrics, 320 F. Supp. 3d 757, 761 (M.D.N.C. 2018) ("While [the plaintiff] does allege she was held to a higher standard than the other CMAs, there is no allegation of the race of the other CMAs or how they received favorable treatment. It is not enough to make conclusory allegations that an employment action was taken because of race."); see also Nadendla v. WakeMed, 24 F.4th 299, 305-06 (4th Cir. 2022).

- 34 -

Because Plaintiff has failed to set forth, at this time, facts that plausibly allege racial discrimination, this claim will be dismissed without prejudice.

### ii. <u>Hostile Work Environment – Sexual Harassment</u>

Plaintiff also alleges a hostile work environment based on "the constant sexual harassment [she] experienced" by employees and customers of MotorCo. (<u>See</u> Am. Compl. (Doc. 13) at 19.) In order to state a hostile work environment claim based on sex under Title VII, a plaintiff "must allege facts that allow a court to infer that '(1) the conduct was unwelcome; (2) it was based on the plaintiff's sex; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer.'" <u>Vincent v. N.C. Dep't of Transp.</u>, No. 1:20-CV-51, 2020 WL 5710710, at *8 (M.D.N.C. Sept. 24, 2020) (citation omitted); <u>see also</u> <u>Hoyle v. Freightliner, LLC</u>, 650 F.3d 321, 331 (4th Cir. 2011) (citation omitted) (describing the elements of hostile work environment in analyzing a motion for summary judgment).

Defendants concede that the offending conduct was unwelcome to Plaintiff and was because of her sex, but contest whether Plaintiff has plausibly alleged that this conduct could be imputed to her employer and whether the conduct was sufficiently

- 35 -

severe or pervasive to alter the conditions of her employment and create an abusive atmosphere. (Def.'s Mem. (Doc. 15) at 10.)

Because this court has deferred ruling on whether the continuing violations doctrine applies, this court also defers ruling, pursuant to Federal Rule of Civil Procedure 12(i), on whether Plaintiff has plausibly alleged a hostile work environment. Without more information as to whether Plaintiff's sole timely claim is sufficiently related to the other alleged incidents of harassment to constitute "one unlawful employment practice," this court is not able to ascertain which events may be properly considered in evaluating the sufficiency of Plaintiff's hostile work environment claim. See Walker v. Serv. Corp. Int'l, No. 4:10-cv-48, 2011 WL 1370575, at *3 (W.D. Va. Apr. 12, 2011) (explaining that where "further factual development is necessary in order to make an accurate determination of whether claims are to be dismissed, Rule 12 permits the Court to defer its ruling as to the claims' legal sufficiency").

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Title VII claims of constructive discharge and racial discrimination will be dismissed. Her claim of constructive discharge will be dismissed because this claim is outside the scope of her EEOC Charge and

thus not properly exhausted through the administrative process. Plaintiff's claim of racial discrimination will be dismissed, without prejudice, because she has not alleged facts that plausibly support this claim. Plaintiff's claim for hostile work environment will not be dismissed, as this court defers resolving Defendant's 12(b)(6) motion as to this claim pursuant to Rule 12(i).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Amended Complaint, (Doc. 14), is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** as to Plaintiff's claim of constructive discharge and the claim is **DISMISSED.** The motion is also **GRANTED** as to Plaintiff's claim of racial discrimination and the claim is **DISMISSED WITHOUT PREJUDICE.** Defendant's Motion is **DENIED WITHOUT PREJUDICE** and **DEFERRED TO SUMMARY JUDGMENT OR TRIAL,** pursuant to Fed. R. Civ. P. 12(i), as to Plaintiff's claim of a hostile work environment.

This the 5th day of February, 2025.

_____
United States District Judge

Case 1:23-cv-00546-WO-LPA    Document 23    Filed 02/05/25    Page 37 of 37