# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MARISSA PETERSON,              )
                               )
          Plaintiff,           )
                               )
     v.                        )      1:23cv546
                               )
MOTORCO, LLC,                  )
                               )
          Defendant.           )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plaintiff's Motion of Extension of Time to Respond with Plaintiff's Amended Pleadings" (Docket Entry 29 (the "Motion") at 1).[1] For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

On June 6, 2023, Marissa Peterson (the "Plaintiff") filed a two-page complaint in state court, asserting that Motorco, LLC (the "Defendant") engaged in "actions and negligence that allowed employment discrimination based on sex and gender to occur against Plaintiff" (Docket Entry 5 (the "Complaint") at 1). (See id. at 1-2.) On June 30, 2023, Defendant removed the case to this Court, explaining that, although "the Complaint is not abundantly clear" (Docket Entry 1 at 2), "it appears that Plaintiff may be alleging

---

1 For legibility reasons, this Opinion generally omits all-cap and bold font, as well as the word "the" in front of "Plaintiff" and "Defendant," in all quotations from the parties' materials. [Docket Entry page citations utilize the CM/ECF footer's pagination.]

claims under Title VII" (id.), which claims would fall within this Court's "original jurisdiction" (id.). (See id. at 1-3.) On August 7, 2023, Defendant timely moved to dismiss Plaintiff's Complaint "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (the "Rules") (Docket Entry 8 (the "First Dismissal Motion") at 1), on the grounds that, inter alia, any Title VII claim qualifies as untimely (see id.) and Plaintiff further "failed to plausibly allege facts sufficient to state all the elements of her claim for hostile work environment" (id. at 2). "In the alternative, Defendant move[d] for a more definite statement pursuant to Rule 12(e)" (id.), explaining that

> Plaintiff's pleading regarding Defendant's alleged "negligence that allowed employment discrimination" is so vague and ambiguous that Defendant cannot reasonably be required to frame a responsive pleading. Without any specific pleading regarding what claims are alleged, or any numbered paragraphs, Defendant is unable to determine what claims are alleged and therefore is hypothesizing as to these claims.
>
> Alternative to its motion to dismiss, and in the event Defendant is incorrect about what claims are alleged, Defendant requests that Plaintiff provide the specific claims that are being alleged as well as numbered paragraphs so that Defendant may respond fully to the allegations.

(Id. (paragraph numbering omitted).)

On September 25, 2023, Plaintiff requested an extension of time, "to October 28, 2023[,] to file an Answer or otherwise respond to Defendant's [First Dismissal Motion]." (Docket Entry 11 at 1; see also id. at 2.) The Court (per United States District

2

Judge William L. Osteen, Jr.) granted Plaintiff's request, extending her response deadline to October 28, 2023. (See Docket Entry 12 at 1.) On October 30, 2023, Plaintiff filed a twenty-three-page amended complaint (see Docket Entry 13 (the "Amended Complaint") at 1-23), for sex and race discrimination and "Constructive Discharge" (id. at 4) under Title VII (see id. at 3), asserting that she "was a victim of sexual harassment and assault while working in the toxic work environment upheld by [Defendant]" (id. at 5). As relief for these alleged wrongs, the Amended Complaint states, in full: "Plaintiff is seeking damages in excess of $145,000 from Defendant for emotional dam[ag]es." (Id. at 6.)

On November 13, 2023, Defendant moved to dismiss Plaintiff's Amended Complaint, again asserting, among other arguments, that Plaintiff's Title VII claims qualify as untimely, as well as that she "failed to present a plausible claim for race and/or sex discrimination as the conduct at issue was not severe or pervasive" (Docket Entry 14 (the "Second Dismissal Motion") at 1). (See id. at 1-2.)[2] On December 1, 2023, Plaintiff requested an extension of time to respond to Defendant's Second Dismissal Motion (see Docket Entry 18 at 1), which request the Court (per Judge Osteen) granted,

---

2 After Defendant filed the Second Dismissal Motion, the Court (per Judge Osteen) denied the First Dismissal Motion as moot, in light of the filing of the Amended Complaint. (See Docket Entry 16 at 1 (explaining that "[t]he Amended Complaint is currently the operative pleading and renders the Complaint of no legal effect," mooting the First Dismissal Motion (citation omitted)).)

making January 3, 2024, Plaintiff's response deadline (see Docket Entry 20 at 1). On January 3, 2024, Plaintiff filed a four-paragraph, two-page response to the Second Dismissal Motion (see Docket Entry 21 at 1-2),[3] baldly asserting that her Amended Complaint "exceeds the standards governing the form of a complaint as required by [the Rules]" (id. at 1), that her claims qualify as timely because "[t]he pattern of conduct that created a hostile work environment, sexual harassment and physical assault, [sic] culminated, [sic] forcing Plaintiff to resign on June 27, 2022," such that she "submitted [her] EEOC charge in a timely manner" (id.), and that "[t]he harassment and assault Plaintiff endured was severe and pervasive, and it is for the judge and/or jury to decide," as an alleged "issue of fact that can't be decided on a [m]otion to [d]ismiss" (id.). Plaintiff did not address the other arguments that Defendant raised in support of its Second Dismissal Motion. (Compare Docket Entry 15 (contending, inter alia, that Plaintiff's claims exceed scope of EEOC charge, that Amended Complaint fails to plausibly allege grounds to impute conduct to Defendant, and that "Plaintiff has failed to plausibly allege that she was treated differently because of her race" (id. at 15)), with Docket Entry 21 (lacking any response to such arguments).)

---

3 The final paragraph contains a single sentence (see id. at 1 ("For the foregoing reasons, the present Motion to Dismiss should be denied.")) and the second page of Plaintiff's response consists entirely of the certificate of service (see id. at 2).

4

Defendant filed a timely reply to Plaintiff's response. (See Docket Entry 22.)

On February 5, 2025, the Court (per Judge Osteen) granted in part and denied in part the Second Dismissal Motion. (See Docket Entry 23 (the "Dismissal Opinion") at 1-37.)[4] To resolve the Second Dismissal Motion, the Dismissal Opinion first defined Plaintiff's claims (see, e.g., id. at 12 & n.8), explaining:

> In light of the contents of Plaintiff's Amended Complaint and EEOC Charge, th[e C]ourt understands Plaintiff to allege the following claims under Title VII: 1) continued sexual harassment by coworkers and customers amounting to a hostile work environment, 2) race discrimination based on her employer's inadequate response to her claims of sexual harassment, and 3) constructive discharge based on either or both forms of discrimination.

(Id. at 12.) Notably, in defining Plaintiff's proposed claims, the Dismissal Opinion explicitly rejected Defendant's interpretation of the "Amended Complaint [as] alleg[ing] a hostile work environment based on sex and race" (id. at 12 n.8 (emphasis in original)), but noted that any such claim "would fail for similar reasons to Plaintiff's racial discrimination claim" (id.), namely a lack of supporting factual allegations (see id.). Additionally, as relevant to the Motion:

---

4 In so doing, the Dismissal Opinion relied upon certain factual allegations from the Complaint to fill voids in the Amended Complaint, explaining that, "[a]lthough the Amended Complaint is the operative pleading, th[e C]ourt has attempted to use a limited few facts from the original Complaint in order to construe the Amended Complaint in the light most favorable to Plaintiff." (Id. at 2 n.2.)

5

The Dismissal Opinion deferred ruling on the timeliness and sufficiency of Plaintiff's sex-based hostile work environment claim (see id. at 29-30, 35-36), explaining that "[i]t is not clear from the face of [the Amended C]omplaint whether either the June 24[, 2022,] incident [in which a customer yelled at Plaintiff and her coworker, calling them '"bitches and other demeaning names"' (id. at 29-30),] or [Plaintiff's] resignation on June 27[, 2022,] is sufficiently related to Plaintiff's untimely allegations of harassment to be part and parcel of the same 'one unlawful employment practice' such that the continuing violations doctrine may apply" (id. at 30). (See also id. at 36 (explaining that, "[w]ithout more information as to whether Plaintiff's sole timely claim is sufficiently related to the other alleged incidents of harassment to constitute 'one unlawful employment practice,' th[e C]ourt is not able to ascertain which events may be properly considered in evaluating the sufficiency of Plaintiff's hostile work environment claim").)

However, the Dismissal Opinion dismissed without prejudice Plaintiff's racial discrimination claim (see id. at 35), observing that the Amended Complaint's "allegations do not raise [Plaintiff's] claim above the speculative level" (id. at 33), as "[t]he only non-conclusory factual allegation Plaintiff asserts to support this claim is that [the] daughter [of one of Defendant's owners, Roth,] was also sexually harassed" (id.), but "Plaintiff

6

does not assert facts that plausibly allege she and Roth's daughter are similarly situated but for race" (id.). (See also id. at 33-34 (detailing deficiencies, including that Amended Complaint "does not identify Roth's daughter's race," provides "no information regarding the nature and circumstances of the sexual harassment Roth's daughter endured and whether it was similar to Plaintiff's alleged experience," and contains "no facts to support [Plaintiff's] conclusory statement" that "'stricter consequences'" ensued with Roth's daughter's harassment).) The Dismissal Opinion further ruled that any attempted racial discrimination claim premised on Defendant's alleged "fail[ure] to respond to [Plaintiff's] earlier complaints about sexual harassment prior to June 23, 2022, because of her race . . . [is] not timely." (Id. at 27 n.13.)

Finally, the Dismissal Opinion dismissed with prejudice Plaintiff's constructive discharge claim, finding that "Plaintiff's claim for constructive discharge is not within the scope of her EEOC charge[ and] has not been administratively exhausted." (Id. at 25.)

On February 19, 2025, Defendant filed an answer to the Amended Complaint (see Docket Entry 24 (the "Answer") at 9), which, inter alia, "admitted that Mr. Roth's daughter, who does not identify as white, had incidents at [Defendant]" (id. at 6), but "denied that there were stricter consequences in those instances" (id.). The

7

following day, the Clerk scheduled this case for an Initial Pretrial Conference on March 31, 2025. (See Docket Entry 25 at 1.) On March 26, 2025, Defendant filed "Defendant's Proposed Rule 26(f) Report" (Docket Entry 26 at 1), which proposed that discovery commence on April 14, 2025 (see id. at 1), and conclude on October 15, 2025 (see id. at 2), with a deadline of June 1, 2025, for Plaintiff to move for leave to amend her pleadings (see id.) and July 1, 2025, for Defendant to move for leave to amend its pleadings (see id.). On March 31, 2025, Defendant filed a "Joint Rule 26(f) Report" (Docket Entry 27 at 1), which indicated that Plaintiff agreed to the proposed dates (see id.), but lacked Plaintiff's signature (see id. at 4). On April 17, 2025, Plaintiff provided a signed "Notice of Acceptance," which confirmed that she reviewed the Joint Rule 26(f) Report and "agree[d] with its proposed terms." (Docket Entry 28 at 1.) That same day, the Court (per the undersigned United States Magistrate Judge) adopted the Joint Rule 26(f) Report (see Text Order dated Apr. 17, 2025) (the "Scheduling Order"), establishing June 1, 2025, as Plaintiff's deadline for requesting leave to amend her pleadings (see, e.g., Docket Entry 27 at 2).

The docket contains no filings from either party between the issuance of the Scheduling Order and July 14, 2025, when Plaintiff filed the Motion (see Docket Entry 29 at 1-2) and her proposed second amended complaint (Docket Entry 29-1 (the "Proposed Second

8

Amended Complaint") at 10). (See Docket Entries dated Apr. 17, 2025, to July 14, 2025.) Spanning a total of three pages, including the certificate of service (see Docket Entry 29 at 1-3), the Motion substantively states, in full:

> [Plaintiff] petitions the Court for an extension of time to respond to the PLAINTIFF'S AMENDED PLEADINGS.
>
> In support of this Motion of Extension of Time, Plaintiff states as follows:
>
> Plaintiff is still seeking Counsel. Without Counsel, Plaintiff has been representing themself and requests additional time to properly prepare response with the resources available to them.
>
> 1. This motion is filed in good faith for the reasons stated and not for purposes of delay.
>
> 2. Plaintiff requests a total of 14 additional days following its current due date of June 30 2025, to file PLAINTIFF'S AMENDED PLEADINGS.
>
> 3. WHEREFORE, hereby respectfully requests that Plaintiff's Motion for Extension of Time to file PLAINTIFF'S AMENDED PLEADINGS be GRANTED and for an Order enlarging the time to file PLAINTIFF'S AMENDED PLEADINGS or alternative until July 14 2025.
>
> 4. Defendant's Counsel consented to the July 14 2025 due date.

(Id. at 1-2 (paragraph numbering, capitalization, and scrivener errors in original).)

For its part, the Proposed Second Amended Complaint contains only five pages of factual allegations (see Docket Entry 29-1 at 2-6),[5] which generally appear more conclusory and less detailed than

---

5    Notably, despite Defendant's prior emphasis on the
(continued...)

the factual allegations in the Amended Complaint (compare id., with Docket Entry 13 at 7-19). The Proposed Second Amended Complaint does, however, supplement the factual allegation underlying Plaintiff's racial discrimination claim, as follows:

> Plaintiff's race and gender were factors in Defendant's failure to act. Several coworkers stated they believed management would have responded differently if Plaintiff were white. Plaintiff was also informed that Roth's daughter, A[.] — who is half-Black but white-passing — had experienced harassment and received swift corrective action. All of [Defendant's] owners are white.

(Docket Entry 29-1 at 6.) The Proposed Second Amended Complaint also lists six "claims for relief" (see id. at 7-8), specifically "Hostile Work Environment (Title VII)" based on "race and sex" (id. at 7), "Disparate Treatment (Title VII)" based on "race and sex" (id.), "Failure to Prevent Harassment (Title VII)" (id.), "Constructive Discharge (Title VII)" (id.), "Intentional Infliction of Emotional Distress" (id. at 8), and "Negligent Retention and Supervision" (id.). As relief for these alleged wrongs, the Proposed Second Amended Complaint requests "compensatory and punitive damages for emotional distress, mental anguish, and Defendant's willful disregard of [Plaintiff's] rights in an amount up to the statutory maximum permitted under 42 U.S.C. § 1981a," as

---

5(...continued)
importance of detailing all allegations in clearly numbered paragraphs (see, e.g., Docket Entry 8 at 2), the Proposed Second Amended Complaint presents many of its factual allegations in unnumbered subparagraphs, delineated only by bullet points (see Docket Entry 29-1 at 2-6).

well as "back pay and front pay totaling $50,000" and "medical damages in the amount of $10,000 for treatment resulting from Defendant's conduct," along with "injunctive relief requiring Defendant to implement harassment prevention policies and staff training." (Id. at 9.)

Defendant promptly responded in opposition to the Motion, explaining that (1) it "did not consent to an extension of time for Plaintiff to file an [a]mended [p]leading or consent to Plaintiff's [P]roposed [S]econd Amended Complaint" (Docket Entry 30 at 1),[6] (2) that, "[p]er the [S]cheduling [O]rder, Plaintiff's deadline to move to amend was June 1, 2025, not June 30, 2025" (id.), and (3) that "at least part of these claims have already been dismissed and the added claims are futile" (Docket Entry 31 at 1). Plaintiff filed no reply in support of her Motion. (See Docket Entries dated July 14, 2025, to present (lacking reply to Defendant's opposition filings).)[7]

---

6 Defendant theorized that Plaintiff "inadvertently filed the Motion indicating Defendant's consent due to what appears to be a misunderstanding about consent over [extending Plaintiff's deadline to serve certain] discovery responses." (Id. at 2; see also Docket Entries 30-1 to 30-3 (email correspondence between Defendant's counsel and Plaintiff regarding Defendant's discovery requests and Plaintiff's repeatedly extended deadline for responding thereto).)

7 Plaintiff did, however, file both a motion requesting leave to bring a support person to her deposition in August 2025 (see Docket Entry 32) and an untimely motion to extend the discovery deadline in November 2025 (see Docket Entry 35).

11

## DISCUSSION

As the United States Court of Appeals for the Fourth Circuit has explained, "tension" exists between Rule 15(a), which "provides that leave to amend shall be freely given when justice so requires," and Rule 16(b), which "provides that a schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (internal quotation marks omitted). However, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." Id.; see also Cook v. Howard, 484 F. App'x 805, 814-15 (4th Cir. 2012) (explaining that, after scheduling order deadline, "a party must first demonstrate 'good cause' [under Rule 16(b)(4)] to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment"). "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" Cook, 484 F. App'x at 815 (brackets in original).

12

Accordingly, "in considering whether 'good cause' excuses compliance with a scheduling order deadline, the district court *must* examine whether the movant had been diligent, though unsuccessful, in attempting to acquire the information that would have formed the basis of a timely motion to amend." Id. at 818-19 (emphasis in original). "If that party was not diligent, the inquiry should end." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (explaining that, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification"). Moreover, if a party knew or should have known of the basis for the proposed amendment prior to the scheduling order deadline, "then the party cannot establish good cause under Rule 16," Faulconer v. Centra Health, Inc., 808 F. App'x 148, 152 (4th Cir. 2020). See, e.g., Cummins, Inc. v. New York Life Ins., No. 10 Civ. 9252, 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012) ("The focus of the good cause inquiry is on the diligence of the party seeking to amend, and the court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint."); Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 460 (M.D.N.C. 2003) ("'Good cause' under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered 'in the exercise

13

of reasonable diligence' until after the amendment deadline had passed. Good cause is not shown when the amendment could have been timely made." (citation and certain internal quotation marks omitted)); see also Cook, 484 F. App'x at 817 ("The lack of diligence that precludes a finding of good cause is not limited to a plaintiff who has full knowledge of the information with which it seeks to amend its complaint before the deadline passes. That lack of diligence can include a plaintiff's failure to seek the information it needs to determine whether an amendment is in order." (internal quotation marks omitted)).

As an initial matter, the Motion provides no information regarding Plaintiff's attempts to comply with the Scheduling Order. (See Docket Entry 29 at 1-3.) Plaintiff has thus failed to establish good cause under Rule 16(b). See Faulconer, 808 F. App'x at 153 (upholding determination that plaintiff failed to satisfy Rule 16(b) good cause standard where he moved to amend complaint "after the scheduling order's deadline" without "offer[ing] any explanation for that delay"); see also Premier Comp Sols., LLC v. UPMC, 970 F.3d 316, 319 (3d Cir. 2020) (upholding determination that plaintiff forfeited Rule 16(b)(4) good cause argument by failing to raise it in relevant motion).

In addition, the record demonstrates that Plaintiff should have known of her proposed amended claims prior to expiration of the Scheduling Order's deadline. All of the conduct that Plaintiff

14

challenges in the Proposed Second Amended Complaint occurred either "[d]uring [Plaintiff's] employment," which ended on "June 26, 2022" (Docket Entry 29-1 at 2), or shortly thereafter (see id. at 6 (discussing post-resignation message and meeting); see also Docket Entry 13 at 19 (alleging message occurred on June 28, 2022, and meeting occurred on July 15, 2022)), prior to commencement of this case (see Docket Entry 5 at 1). (See generally Docket Entry 29-1.) Moreover, the Amended Complaint seeks compensation "for emotional dam[ag]es" (Docket Entry 13 at 6), reflecting Plaintiff's awareness of her alleged emotional injuries as of at least October 2023 (see id.). In February 2025, however, the Dismissal Opinion omitted any emotion-based claim from its construction of the Amended Complaint (see Docket Entry 23 at 12) and specifically rejected the notion that Plaintiff pursued any hostile work environment claim based on race (see id. at 12 n.8). The Dismissal Opinion also explicitly noted the importance of identifying Roth's daughter's race for Plaintiff's racial discrimination claim (see id. at 33) and, by February 2025, the Answer revealed that Roth's daughter "does not identify as white" (Docket Entry 24 at 6).

At a minimum, therefore, Plaintiff could have investigated Roth's daughter's race and pursued inclusion of her proposed claims prior to the Scheduling Order's June 1, 2025, deadline for requesting leave to amend the pleadings. Particularly given her pattern of delay in this long-running case, Plaintiff's lack of

15

diligence in pursuing her proposed amendments warrants denial of the Motion. See, e.g., Faulconer, 808 F. App'x at 152-53; Cook, 484 F. App'x at 817; see also McMillan v. Cumberland Cnty. Bd. of Educ., 734 F. App'x 836, 846 (4th Cir. 2018), as amended (Apr. 4, 2018) (concluding that plaintiff "did not show good cause to amend her complaint," explaining that "[o]rdinary diligence would have revealed the fact that she could have asserted a breach of contract claim because the basis on which she would assert a breach of contract claim stems from the same allegations on which she asserted her other claims"); Great Lakes Ins. SE v. Andersson, 338 F.R.D. 424, 427-28 (D. Mass. 2021) (denying motion to amend under Rule 16(b), noting that, although plaintiff "claims that it acted with the utmost diligence possible, considering that it only became aware of [the defendant's] likely breach of the Named Operator Warranty" at defendant's deposition, the court "agree[d] with [the defendant] that [the plaintiff] had earlier notice of — or good reason to suspect the existence of — this cause of action").

Moreover, "[e]ven assuming [that Plaintiff] had demonstrated good cause to modify the [S]cheduling [O]rder, the Court would deny leave to amend the [Amended] Complaint under Rule 15(a)(2) because such amendment would be futile." Belcher v. W.C. Eng. Inc., 125 F. Supp. 3d 544, 550 (M.D.N.C. 2015). "Although Rule 15(a)(2) provides that '[t]he court should freely give leave when justice so requires,' futility of the amendment is one basis for denying such

16

leave." Id. (brackets in original). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). Accordingly, a proposed amendment fails for futility if it could not survive a Rule 12(b)(6) motion to dismiss. See Smith v. Bank of the Carolinas, No. 1:11cv1139, 2012 WL 4848993, at *3 (M.D.N.C. Oct. 11, 2012) (citing United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)). Plaintiff's proposed new claims cannot surmount this bar.

To begin, the Proposed Second Amended Complaint attempts to reassert a claim that the Court (per Judge Osteen) already dismissed with prejudice. (Compare, e.g., Docket Entry 23 at 36-37 (dismissing with prejudice constructive discharge claim), with Docket Entry 29-1 at 7 (asserting constructive discharge claim).) Without fixing all of the identified deficiencies, it also seeks to assert a claim that the Court previously identified as deficient under Rule 12(b)(6). (Compare, e.g., Docket Entry 23 at 33-34 (identifying multiple factual deficiencies), with Docket Entry 29-1 at 6 (addressing only one factual deficiency).) Those proposed claims thus qualify as futile. Beyond these deficiencies, Defendant advanced multiple additional arguments regarding the futility of Plaintiff's proposed new claims. (See Docket Entry 31

17

at 1-11.)⁸  Plaintiff did not respond to Defendant's arguments. (See Docket Entries dated July 18, 2025, to present.)  By failing to address Defendant's arguments, Plaintiff conceded her proposed claims' futility.  See, e.g., Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (examining implications of such failure, noting existence of "general principle that a party who fails to address an issue has conceded the issue," and collecting cases).

## CONCLUSION

Plaintiff failed to establish good cause for her untimely Motion and conceded the futility of her proposed new claims.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 29) is **DENIED**.

This 20th day of November, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

8  Given that the Dismissal Opinion "withheld ruling on Plaintiff's Title VII hostile work environment claim based on sex until summary judgment," Defendant declined to "seek further dismissal of this claim" in responding to the Motion.  (Id. at 3 n.1.)  It bears noting, however, that the Proposed Second Amended Complaint, which contains largely conclusory sex-related allegations, provides no additional factual support for Plaintiff's remaining hostile work environment claim and, indeed, omits factual allegations upon which the Dismissal Opinion relied in rejecting Defendant's Rule 12(b)(6) request to dismiss such claim as untimely.  (See Docket Entry 29-1 at 2-6.)